[Cite as *State v. Simon*, 2020-Ohio-3841.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**                   **CASE NO. 5-19-47**

    **v.**

**EARL R. SIMON,**                            **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Hancock County Common Pleas Court
Trial Court No. 1997 CR 00008**

**Judgment Affirmed**

**Date of Decision:   July 27, 2020**

**APPEARANCES:**

    *Brian A. Smith* **for Appellant**

    *Phillip A. Riegle* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Earl R. Simon ("Simon") appeals the December 3, 2019 judgment entry of the Hancock County Common Pleas Court classifying him as a sexual predator under Ohio's version of Megan's Law. For the reasons that follow, we affirm.

{¶2} The genesis of this case is the sexual conduct that occurred in January through April 1996 involving Simon and a four-year-old-child victim. On January 14, 1997, the Hancock County Grand Jury indicted Simon on three criminal counts including: Count One of rape in violation of R.C. 2907.02(A)(1)(b) with a penalty specification under R.C. 2907.02(B), an aggravated-first-degree felony, and Counts Two and Three of felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b) also with penalty specifications under R.C. 2907.12(B), aggravated-first-degree felonies.[1] (Doc. No. 1).

{¶3} On January 22, 1997, Simon appeared for arraignment and entered pleas of not guilty.[2] (Doc. No. 5). Thereafter, on May 15, 1997, Simon withdrew his pleas of not guilty and entered guilty pleas, under a written plea agreement, to Counts Two and Three as amended. (Doc. Nos. 45, 46, 50, 113); (Dec. 3, 2019 Tr. at 4). Specifically, in exchange for his guilty pleas, the State dismissed Count One

---

[1] Because of the age of the victim at the time the offenses were committed, Simon was subject to a mandatory-life sentence on all three criminal counts, if convicted. (*See* Doc. Nos. 1, 25).
[2] On May 5, 1997, Simon underwent a pretest interview for a stipulated-polygraph examination where Simon made admissions to the indicted conduct. (State's Ex. 10); (Dec. 3, 2019 Tr. at 40, 43).

and the penalty specifications as to Counts Two and Three. (Doc. Nos. 45, 46, 50). The trial court accepted Simon's guilty plea, and immediately sentenced Simon to consecutive-indeterminate-prison terms of not less than 10 years nor more than 25 years as to Counts Two and Three, for an aggregate prison sentence of 20 years to 50 years in prison. (Doc. Nos. 50, 113); (Dec. 3, 2019 Tr. at 4). Importantly, Simon was advised by the trial court that pursuant to his guilty plea and under R.C. 2950.09, he would be classified as a sex offender under Megan's Law, the sex-offender-classification law in effect at that time. (*Id.*); (*Id.* at 4-5). However, no sex-offender-classification hearing was conducted at the time of sentencing. (*Id.*); (*Id.*).

{¶4} Before the trial court journalized its sentence and on May 21, 1997, Simon filed a motion in the trial court challenging the constitutionality of R.C. 2950.09. (Doc. Nos. 48, 49). Further, on March 18, 1999, Simon filed a motion under R.C. 2947.06(B) requesting that the trial court grant him shock probation.[3] (Doc. Nos. 61, 62). On July 27, 1999, the trial court took both of Simon's motions under advisement and ultimately denied both requests. (Doc. No. 64). After a status conference with the trial court on September 2, 1999 (journalized on September 14, 1999) the parties agreed that Simon's sex-offender-classification hearing under R.C.

---

[3] R.C. 2947.06 is captioned as "Testimony after verdict to mitigate penalty; reports confidential". R.C. 2947.06(1996) (current version of R.C. 2947.06 (2004)).

2950.09 be continued until further order of the trial court.[4]  (Doc. Nos. 65, 113); (Dec. 3, 2019 Tr. at 5).

{¶5} On December 3, 2019, the trial court conducted a sexual-classification hearing for Simon.[5]  (Doc. No. 97).  Simon was personally present for the hearing, and after taking evidence, the trial court classified Simon as a sexual predator under Megan's Law.[6]  (Doc. Nos. 102, 113); (Dec. 3, 2019 Tr. at 5).

{¶6} Simon filed his notice of appeal on December 12, 2019.  (Doc. No. 105).  He raises one assignment of error for our review.

### Assignment of Error

**Because the record does not show competent, credible evidence that the Appellant met the criteria for classification as a "sexual predator" under R.C. 2950.09(B), the trial court erred in classifying Appellant as a "sexual predator" under Megan's Law.**

---

[4] Simon filed a writ of habeas corpus and following our dismissal of his writ on March 3, 2000 for his failure to comply with the mandates of R.C. 2725.04(D), Simon filed a petition for postconviction relief in the trial court on July 13, 2000.  *See State v. Simon*, 3d Dist. Hancock No. 5-00-06.  (Case No. 5-00-06, Mar. 3, 2000 JE); (Doc. Nos. 66, 67, 68).  The trial court denied his request for an evidentiary hearing and his petition on August 17, 2000.  (Doc. Nos. 69, 70, 71).  On September 1, 2000, Simon filed a motion requesting the trial court issue findings of fact and conclusions of law addressing its denial of his petition for postconviction relief.  (Doc. No. 72).  Thereafter, Simon appealed the trial court's denial of his petition for postconviction relief and ultimately voluntarily dismissed his appeal.  *See State v. Simon*, 3d Dist. Hancock No. 5-00-23; (Case No. 5-00-23, Oct. 3, 2000 JE).  (Doc. Nos. 73, 74, 75).  Simon filed a successive petition for postconviction relief on October 16, 2000, a motion to supplement evidentiary matters in support of his petition on February 14, 2001, and a motion for appointment of counsel on March 7, 2001, all of which the trial court denied.  (Doc. Nos. 79, 80, 81, 84, 85, 86, 87, 88).  Subsequently, Simon appealed the denial of his successive petition for postconviction relief which was later dismissed for want to prosecution.  *See State v. Simon*, 3d Dist. Hancock No. 5-01-16; (Case No. 5-01-16, Oct. 3, 2001 JE).  (Doc. Nos. 89, 90, 91).

[5] While Simon's maximum prison term is not set to expire until January 5, 2047, he was scheduled to be released from prison on parole supervision on December 4, 2019.  (Doc. Nos. 101, 113).  (Dec. 3, 2019 Tr. at 8, 51); (State's Ex. 5).

[6] The parties do not contest that Megan's Law was applicable under the facts presented.  (Doc. No. 113); (Dec. 3, 2019 Tr. at 6, 11-13).

{¶7} In his sole assignment of error, Simon argues that the trial court erred by classifying him as a sexual predator. Specifically, he argues that the trial court did not have competent, credible evidence to meet the criteria for classifying Simon as a sexual predator under R.C. 2950.09(B) since the factors weighed in his favor. For the reasons that follow, we disagree.

*Standard of Review*

{¶8} Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature under Megan's Law, "[o]n appeal, this Court reviews a trial court's sexual-predator designation 'under the civil manifest-weight-of-the-evidence standard and [the trial court's determination] may not be disturbed when the judge's findings are supported by some competent, credible evidence.'" *State v. Johnson*, 3d Dist. Wyandot Nos. 16-13-07 and 16-13-08, 2013-Ohio-4113, ¶ 9, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, syllabus.

*Analysis*

{¶9} The term "sexual predator" is defined as a "person [who] has been convicted of or pleaded guilty to committing a sexual oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E) (1997) (current version R.C. 2950.01(E)(1) (2019)). Felonious sexual penetration was a "sexually oriented offense." 2907.12(A)(1)(b) (1993), repealed in Am.H.B. No. 445, 1996 Ohio Laws 155 (1996); 2950.01(D)(1) (1997) (current version R.C.

2950.01(A) (2019)). *See also* R.C. 2907.01(A) (1991), (current version of R.C. 2907.01(A) (2019)); 2907.02(A)(1)(b) (1993), (current version of R.C. 2907.02(A)(1)(b) (2002)).

{¶10} R.C. 2950.01 provides in its pertinent part:

(G)  An offender is "adjudicated as being a sexual predator" if any of the following applies:

* * *

(2)  Regardless of when the sexually oriented offense was committed, on or after the effective date of this section, the offender is sentenced for a sexually oriented offense, and the sentencing judge determines pursuant to division (B) of section 2950.09 of the Revised Code that the offender is a sexual predator.

* * *.

R.C. 2950.01(G)(2) (1997) (current version of R.C. 2950.01(E), (F) (2019)).  Here, the trial court found that Simon had been "convicted of two (2) sexually oriented offenses, two (2) counts of Felonious Sexual Penetration each aggravated felonies of the first degree, in violation of Ohio Revised Code §2907.12(A)(1)(b), both involving a four (4) year old child."  (Doc. No. 102).  Thus, Simon's hearing was conducted under R.C. 2950.09.

{¶11} R.C. 2950.09(A) states that

a person who * * * has been convicted of * * * a sexually oriented offense may be classified as a sexual predator for the purposes of this chapter only in accordance with division (B) or (C) of this section.

R.C. 2950.09(A) (1996) repealed in Am.S.B. No. 10, 2007 Ohio Laws 10 (2007). R.C. 2950.09(B)(1) requires the trial court "conduct a hearing to determine whether the offender is a sexual predator" providing Simon and the State with "notice of the date, time, and location of the hearing." R.C. 2950.09(B)(1) (1996) repealed in Am.S.B. No. 10, 2007 Ohio Laws 10 (2007). Importantly, Simon and the State were properly notified of the classification hearing and presented evidence in the trial court. (Dec. 3, 2019 Tr. at 1-76, 100); (Doc. No. 113).

{¶12} When making the determination regarding a sexual-predator designation under R.C. 2950.09(B)(2), the

> * * * judge shall consider all relevant factors, including, but not limited to, all of the following:
>
> (a) The offender's age;
>
> (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
>
> (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
>
> (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
>
> (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
>
> (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense

was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;

(g)  Any mental illness or mental disability of the offender;

(h)  The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

(i)  Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

(j)  Any additional behavioral characteristics that contribute to the offender's conduct.

R.C. 2950.09(B)(2)(a)-(j) (1996) repealed in Am.S.B. No. 10, 2007 Ohio Laws 10 (2007).  At the conclusion of the hearing, "the judge shall determine by clear and convincing evidence whether the offender is a sexual predator" under R.C. 2950.09(B)(3).  R.C. 2950.09(B)(3) (1996) repealed in Am.S.B. No. 10, 2007 Ohio Laws 10 (2007).

{¶13} Here, the parties stipulated to the trial court's taking of judicial notice of contents of the trial court's file folder on Simon, the admission of State's Exhibits 1-11, and the identification of Simon.[7]  (Doc. No. 102); (Dec. 3, 2019 Tr. at 6-9). At Simon's classification hearing, the State presented two witnesses:  Kathy Elliot ("Elliot"), a former investigator for Hancock County Job and Family Services and

---

[7] The parties agreed that State's Exhibits 2, 3, 4, and 6 were to remain under seal.  (Doc. Nos. 102, 113); (Dec. 3, 2019 Tr. at 11).

Dana Dunbar (Dunbar), an investigator for the Hancock County Prosecutor's Office. (Doc. Nos. 102, 113); (Dec. 3, 2019 Tr. at 13-63). Only Simon testified for the defense at the sexual-classification hearing. (Doc. Nos. 102, 113); (Dec. 3, 2019 Tr. at 63-76).

{¶14} In addressing the relevant-statutory factors in the instant case, the record supports that the trial court heard testimony with regard to R.C. 2950.09(B)(2)(a) as to Simon's age. Specifically, the State presented the testimony of Elliot (with 25 years' experience in child welfare) who testified that Simon's advanced age of 73 did not lessen his risk of reoffending, given that, the offenses involved digital penetration. (Dec. 3, 2019 Tr. at 16-17, 25-28).

{¶15} As to the factor under R.C. 2950.09(B)(2)(b), the State presented the testimony of Dunbar regarding Simon's criminal history that included a passing-bad-checks conviction from Allen County, a record of public intoxication and criminal trespass from Fort Lauderdale, Florida (in 1968), and an arrest for aggravated assault in Tampa, Florida (in 1987). (*Id.* at 52). Further, at the time of Simon's arrest in the case *sub judice*, he had an unexecuted warrant for his arrest for an insufficient-funds charge out of Pike County, Ohio. (*Id.* at 54).

{¶16} As to the factor under R.C. 2950.09(B)(2)(c), Elliot testified as to the minor-child-victim's age and the barriers young children have when disclosing sexual conduct with adults. (*Id.* at 28). Specifically, Elliot testified that children in

this victim's age range have difficulty explaining details and are compliant and trustful when instructed not to disclose. (*Id.*). According to Elliot, Simon's choice of a minor-child victim in this age range also placed him in a higher-risk category. (*Id.*)

{¶17} The record further supports that the trial court considered the factor under R.C. 2950.09(B)(2)(d), in regards to Elliot's testimony that this case involved a single-minor-child victim; however, Elliot also testified of her awareness of at least one unsubstantiated allegation that Simon had been previously accused of "sexually assaulting another sibling's child" in this same time frame. (*Id.* at 41-42).

{¶18} The trial court considered the factor under R.C. 2950.09(B)(2)(e) when it heard testimony from Elliot that Simon did not use any drugs or alcohol to impair the victim. (*Id.* at 35).

{¶19} The record also supports that the trial court considered R.C. 2950.09(B)(2)(f) regarding sex-offender treatment when Simon testified that he participated in three-to-four months of sex-offender classes while in prison, even though Simon could not recall the specific time frames of the classes. (*Id.* at 67).

{¶20} The record also supports that the trial court considered R.C. 2950.09(B)(2)(g) regarding Simon's mental illness or disability when Elliot and Dunbar testified that they were unaware if Simon suffered from any mental illness or disability. (*Id.* at 36, 58). Moreover, the parties stipulated to the admission of

State's Exhibits 3 and 4 which addressed Simon's intelligence quotient as being 81, "which falls within the range of Borderline intelligence." (State's Exs. 3, 4).

{¶21} Under R.C. 2950.09(B)(2)(h), the trial court considered Elliot's testimony as to Simon's pattern of abuse on the minor-child victim wherein Simon had admitted to fondling, digitally penetrating, performing cunnilingus on, exposing his penis to, and having the minor-child victim touch his penis. (*Id.* at 40, 43); (State's Ex. 10). Importantly, Simon's abuse of the child occurred while he acted as her primary caretaker/daycare provider (on a weekly basis) over a four-month time frame in 1996. (*Id.* at 18-21, 31, 39).

{¶22} The trial court also considered R.C. 2950.09(B)(2)(i) when Elliot testified that Simon's continued-sexual conduct with the minor-child victim (after the child told him that he hurt her) was cruel and resulted in the intentional infliction of pain on the minor-child victim. (*Id.* at 36-37).

{¶23} The trial court also considered R.C. 2950.09(B)(2)(j) when Elliot testified as to Simon's failure to accept responsibility for his actions and the impact that such lack of acceptance has on successful outcomes of sex-offender programming. (*Id.* at 26, 32).

{¶24} Finally, the record supports that the trial court noted in open court and in its judgment entry that it considered "the arguments of counsel * * * the evidence presented * * * the factors set forth in R.C. §2950.09, [] the recidivism and

seriousness factors" in R.C. 2929.12 "(B), (C), (D) and (E) * * * [, and] the legislative intent of R.C. Chapter 2950." (Doc. No. 102). (*See* Dec. 3, 2010 Tr. at 95-99, 101). *See* R.C. 2950.09(B). Ultimately, the trial court determined by clear and convincing evidence that Simon was "likely to engage in the future in one or more sexually oriented offenses under R.C. 2950.01(E)(1)" and classified Simon as a sexual predator under R.C. 2950.09(B)(3).[8]

{¶25} In challenging his sexual-predator designation, Simon argues that there was a lack of evidence demonstrating that he is likely to commit future offenses. *Compare Johnson*, 2013-Ohio-4113, at ¶ 19. Simon supports this argument by noting his convictions involve a single victim (as in *Johnson*) as well as evidence of his remorse. He further points to his lack of prior sexual-oriented-offense convictions, his frailty, his limited-criminal record, the lack of impairment and cruelty (to the child victim), his professed-mental disability, and his inability to locate housing.[9] *Id.* (*See* Appellant's Brief at 7-13). However, when making these

---

[8] Although the trial court applied the 2007 versions of R.C. 2950.01 and 2950.09 and we apply the 1997 version of R.C. 2950.01 and 1996 version of R.C. 2950.09, the result is the same. (*See* Doc. Nos. 102, 113).
[9] We note that the remorse of and prejudice to an offender are not enumerated factors under R.C. 2950.09(B)(2); however, they may be considered under R.C. 2950.09(B)(2)(j), the catch-all provision. *See*, *State v. Clutter*, 4th Dist. Washington No. 99CA19, 2000 WL 134730, *4 (Jan. 28, 2000) (considering *Clutter's* irresponsible lifestyle under the catch-all provision of R.C. 2950.09(B)(2)(j)); *State v. Leonard*, 10th Dist. Franklin No. 00AP-1229, 2001 WL 697999, *5 (June 21, 2001), (considering *Leonard's* characterization of the victim as a seductress and instigator under R.C. 2950.09(B)(2)(j)'s catch-all provision); *State v. Harris*, 9th Dist. Lorain No. 00CA007691, 2001 WL 866258, *5 (Aug. 1, 2001), (considering *Harris's* love letters to the victim under the catch-all provisions of R.C. 2950.09(B)(2)(j)); State *v. Davis*, 11th Dist. Lake No. 2003-Ohio-6741, 2003 WL 22952574, *4 (Dec. 3, 2003), (considering *Davis's* admissions to other uncharged sexual conduct involving different victims under R.C. 2950.09(B)(2)(j), as a catch-all provision).

arguments, Simon neglects to consider that the factors listed in R.C. 2950.09(B)(2) were drafted by the legislature to assist the trial court in determining an offender's likelihood of recidivism. *Id.*, citing *State v. Thompson*, 92 Ohio St.3d 584, 587-588 (2001).

{¶26} Upon our review of the record, it is clear that the trial court considered the totality of the circumstances of Simon's likelihood of recidivism, and under the evidence presented, the sexual-predator designation was warranted. (*See* Doc. No. 102). As such, we conclude that the findings of the trial court are supported by competent, credible evidence.

{¶27} For these reasons, we cannot conclude that the trial court erred in designating Simon as a sexual predator. Accordingly, Simon's sole assignment of error is overruled.

{¶28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued in his assignment of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**